Carlos N. Iriarte (SBN 187327)
LAW OFFICE OF CARLOS N. IRIARTE
714 W. Olympic Boulevard, Suite 718
Los Angeles, California 90015
(213) 746-6644
(213) 746-4435 Facsimile
carlos.n.iriarte@gmail.com

Attorney for Defendant,
JOSE VIERA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>JOSE VIERA,<br><br>　　　　　Defendant. | 22-CR-00211-ODW<br><br>DEFENDANT JOSE VIERA'S<br>SENTENCING POSITION<br><br>Sentencing: March 20, 2023<br>Time:　　　11:00 a.m.<br>Honorable Otis D. Wright, II |

　　　　Defendant JOSE VIERA ("Viera") respectfully submits to your Honor that the appropriate sentence is 60-months in custody followed by three-years of supervised release.

DATED: March 6, 2023　　　　　　　Respectfully submitted


　　　　　　　　　　　　　　　　*Carlos N. Iriarte*
　　　　　　　　　　　　　　　　Carlos N. Iriarte
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　JOSE VIERA

1

## MEMORANDUM OF POINTS & AUTHORITIES

Viera respectfully submits to this Court that a 60-month custodial sentence followed by three-years of supervised release is appropriate and in compliance with the tenets of § 3553(a) especially the "characteristics of the defendant." 18 USC § 3553(a)(1). What is overlooked throughout this case is Viera's nine-years of service in the United States Army. Before your Honor is a man that served his country with honor and had three tours in Afghanistan and Iraq and came back from these war-stricken countries as a physically, emotionally, and mentally damaged individual as is clearly displayed in the Presentence Investigation Report ("PSR") that is confirmed by his medical and psychiatric records. While Viera understands that his personal issues do not excuse his conduct, they provide an explanation as for his out of character conduct.

Viera, thus, respectfully submits to your Honor that the District Court has wide discretion to consider his individual circumstances. His history and nine years of military service, as outlined below, is extremely relevant to whether a 10-year maximum sentence is "necessary" to satisfy just punishment or to prevent further crimes by Viera, and whether rehabilitation is needed or can be accomplished in a more effective manner. Viera reasons with this Court that a 60-month sentence is just punishment followed by three years of supervised release where it adequately balances the penal component and effectively

2

recognizes his military service in providing him the medical and psychiatric

treatment that he needs for his genuine medical issues while on supervised

release.

I.       VIERA'S MILITARY SERVICE DESERVES A DOWNWARD
         VARIANCE OR DEPARTURE

Viera's military service and his unblemished past warrant this Court

considering a downward variance or departure. See, e.g., U. S. v. Canova, 412 F.

3d 331, 358-59 (2nd Cir. 2005)(affirming six-level downward departure based on

extraordinary public service and good works where the defendant served in

Marine Corp's and as a volunteer firefighter); U. S. v. Baird, 2008 WL 151258 (D.

Neb. Jan 11, 2008))(varying downward by 22-months in child pornography case

considering, among other factors, the defendant's 15-years in the military during

which he served in Iraq and Afghanistan and received numerous

accommodations).

In 1998, Viera enlisted as a reserve in the medical unit for the United

States Army. Initially, his first duty station was in Fort Sill, Oklahoma for basic

training. He distinctly recalls the initial contact with drill sergeants as he

boarded the trucks to be transported to the barracks. It was a constant barrage of

yelling until he got a chance to sleep around midnight each day. Viera was only

allowed to call and write a letter to his parents to let them know that he was fine.

After enduring the grueling training for two months, Viera's family came to his

graduation, and he recalls it as one of the most memorable days of his life. Upon completion of his training, he was assigned to the Los Alamitos Air Base. During his time as a reservist, he also worked at Home Depot. Regrettably, Viera's father experienced severe medical issues during this time, and he was forced to go inactive ready reserve.

In 2000, Viera re-enlisted in active duty in the United States Army. He was then sent to Fort Lee, Virginia for advance individual training. Viera chose his military occupational specialty as a petroleum, oil, and lubricant specialist.

After his training in his field, he was then assigned to Fort Benning, Georgia. His first week consisted of run week in which he ran everywhere that he had to go. The Second two weeks entailed jumping out of planes with ground training drills and learning how to land properly. He recalls his initial two jumps out of a Lockheed C130 Hercules and remembers that it was one of many nervous moments in his military career. Fortunately, Viera did complete the school and he achieved his jump wings. But this came at the price of fracturing his foot while attempting to land at 25 knots, which is 28 miles per hour. He woke up with risers (these are the four straps that connect the suspension lines of the parachute canopy to the parachute harness) wrapped around his neck, and he was unconscious due to hitting his head on the ground and suffered a severe concussion.

4

After his airborne training he was sent to Fort Bragg, North Carolina, the 82nd Airborne Division. Viera recalls his time at Fort Bragg as some of the most memorable moments of his life. At the same time, Viera's family was financially struggling since his dad was disabled due to his failing kidneys. He, thus, gave his parents the little money he earned on a private's pay that left him with about $125.00 in his account on a monthly basis.  Nonetheless, Viera knew it was the right thing to do for his parents and family given everything that they did for him.

On September 11, 2001, Viera recalls that fateful day when the terrorists attacked the twin towers in New York, and other locations. At this time, Viera was assigned to transport the General. He was about to leave when his unit heard the devastating news and he knew that the United States was going to war. Before he left, Viera, another specialist and a second lieutenant had to get Major General Hagenbeck to Pennsylvania to his executive staff. Upon return to Fort Bragg, he recalls it looking like a war zone with barriers and weapons everywhere.

Not too long after, Viera was deployed to Afghanistan for six months. Viera recalls and continues to have flashbacks of the constant bullets and explosions. The one constant thing that was common during this time was that no one could ever relax. And the Iraq war had already started, and Viera found himself sitting

on the flight line in parachutes with the expectation of jumping into a hot zone to clear an airport that was taken over by the insurgents.

Despite these bona fide fears, Viera re-enlisted again and requested an assignment in Germany. Upon arriving at the base, Viera was advised by the doctors that given his deployment that he would have to go through some sort of rehabilitation to help him deal with spending six months in Afghanistan before he was sent out again. Unfortunately, this convalescence never occurred. He was immediately deployed to Iraq, and he spent two years in another war-stricken country. During his placement in Iraq, his son was born, and he never had the opportunity to be present for the birth of his only child. Viera broke down and was very emotional but fortunately he did get one week of rest and recuperation at home. He was quickly sent back to Iraq and his stay was extended another year in Iraq.

Viera's best day came when he left Iraq. He recalls his fellow soldiers laughing it up because for some that would be the last of combat zones in their life. However, this was not the end of war zones for Viera. He re-enlisted again to support the special forces units. He was quickly sent to the Czech Republic border for ground support with the troops and tank units. After a brief stint there, he was ordered to join the 2nd ranger battalion, which was one of his dreams. Through his training, Viera earned the maroon beret, which is the official headdress by the Airborne forces.

Viera was then deployed again to Afghanistan and during his placement, Viera learned that his father was in the hospital for kidney failure. He was able to secure a compassionate reassignment to Fort Irwin, California to be with his father in his final days.

Once back at the base, Viera began to consciously experience the toll that the deployments, combat missions, training, airborne operations, and the overall exposure took on him. He started having issues with just concentrating on tasks that needed to be completed, and his emotions were extremely sporadic. To further exacerbate his personal situation, Viera's father passed away while stationed at Fort Irwin.

Viera came to a point when he realized that he served his country with honor and dignity, but that it was time for him to retire and deal with his physical, mental, and emotional issues that directly stemmed from his honorable service. Viera was, thus, honorably discharged with a rating of 30% physical disability. He was further diagnosed with mental disorders ranging from bi-polar, depression, anxiety, and post-traumatic stress disorder.

During his nine years of military service, Viera received numerous awards: Commendation Award, four Achievement Awards, Valorous Unit Award, two Good Conduct metals, National Defense Service metal, Global War on Terrorism metal, Expeditionary metal, Global War on Terrorism Service metal, Service

Ribbon, two overseas ribbons, Meritorious Unit Commendation, Presidential Unit Citation and Southwest Asia Service metal.

Upon leaving the military Viera remained unemployed while dealing with his health issues and attending some college courses. Initially, Viera did well, but his grades began to decline. He realized that he had difficulty concentrating which inhibited his ability to learn the lesson plan and was forced to drop out of his college courses.

Viera searched for employment and came upon an opportunity through the Bureau of Prisons. He was hired in 2010. During this time Viera stopped taking his medication for a period but he realized that he needed to get back on his medication and therapy to help him deal with his mood swings.

Some of Viera's accomplishments with the BOP, include the fact that he was the Hispanic Program Manager and Alternate Environmental Safety Manager, a part of the Evidence Recovery Team, and was chosen to become a trainer for the institution in evidence collection.

To date, Viera continues with his therapy and medications. Viera respectfully refers your honor to the PSR that outlines his physical (PSR ¶¶ 63-74), mental and emotional health issues (PSR ¶¶ 75-80). Viera continues to have chronic issues with his feet because he has torn ligaments and tendons. He also suffers from insomnia which necessitates sleeping medications as well, as well as the use of the continuous positive airway pressure (CPAP) machine for his

8

obstructive sleep apnea. He also continues to have numbness in his right hand, tennis elbow, constant pain in his knees, and vertebrae issues.

## II. VIERA OBJECTS TO THE UNITED STATES PROBATION OFFICE'S RECOMMENDATION FOR HIM TO REGISTER AS A SEX OFFENDER

Viera pled guilty to a violation of 18 USC § 242 and this charge, by itself, does not qualify as a sex offense under the Sex Offender Registration and Notification Act ("SORNA").[1] Viera is convicted of only deprivation of rights under color of law and this is not an enumerated sex offense necessitating sex registration per SORNA. Therefore, the Probation Office's recommendation is misplaced and shall not be imposed on Viera.

## III. VIERA'S HEALTH & NEED FOR MEDICAL CARE URGE THIS COURT TO VARY OR DEPART DOWNWARD

Given Viera's verified medical and psychiatric issues that resulted from his nine-year military service, your Honor may vary or depart downward based on his medical needs. See U.S.S.G. § 5H1.4. ("An extraordinary physical impairment may be a reason to depart downward."); U. S. v. Alemenas, 553 F. 3d 27 (1st Cir. 2009) (varying downward based on defendant's chronic neck pain, and mental and emotional condition).

[1] The Government in its Sentencing Position also concurs with this legal position. See footnote 1 of the Government's sentencing position. Page 1.

9

IV.   VIERA'S EXTRAORDINARY DEMONSTRATION OF ACCEPTANCE
      OF RESPONSIBILITY WARRANTS THIS COURT TO VARY
      DOWNARD

     Prior to any criminal filing in this matter, Viera negotiated a plea agreement and swiftly pled guilty to the charge based on his agreement to proceed by way of Information. Viera's immediate acceptance of his wrongdoing did not force the Government to spend additional time, resources, and money to prosecute the case further than it had too. This behavior should be awarded with a downward variance.

V.    A 60-MONTH SENTENCE FOR VIERA SATISFIES ALL OF THE
      TENETS OF 18 USC § 3553(a)

     Therefore, and based on all the factors described in this sentencing position, Defendant JOSE VIERA respectfully submits to your Honor that a 60-month sentence satisfies and is consistent with all the tenets of § 3553(a).[2]

DATED: March 6, 2023        Respectfully submitted

                           *Carlos N. Iriarte*

                           Carlos N. Iriarte
                           Attorney for Defendant
                           JOSE VIERA

---

[2] Viera respectfully asks your Honor to allow him to surrender directly to the place of designation by the BOP, as is also recommended by the USPO in its letter to the Court. Therefore, Viera asks for a surrender date 60-days out from the date of the sentencing hearing.